**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ALLEN HOLCOMB,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 25-CV-01807-SPM**

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Allen Holcomb, represented by counsel, seeks judicial review of the final Social Security Administration decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act pursuant to 42 U.S.C. § 423. (Docs. 1, 12). For the reasons stated below, Plaintiff's request is **DENIED**, and the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff first applied for DIB and SSI on April 29, 2021, and his alleged disability beginning June 8, 2018. (Tr. 17). Both claims were initially denied on November 15, 2021, and again upon reconsideration on May 26, 2022. (*Id.*). After a telephonic hearing before Administrative Law Judge ("ALJ") Marcus Johns, the Plaintiff received an unfavorable decision on March 24, 2023, which became the final

agency decision on September 13, 2023. (*Id.* 1, 17–30). Plaintiff then filed a Complaint before this Court, and the matter was remanded back to the ALJ. (*Id.* 583–84).

ALJ Johns held a second hearing and issued an unfavorable decision on November 18, 2024. (*Id.* 499). Plaintiff filed written exceptions to the decision on December 13, 2024, and the Appeals Court declined to assume jurisdiction on August 20, 2025—making the Second Unfavorable Decision the final decision of the Commissioner. (*Id.* 450–51, 457). This appeal was then timely filed on September 19, 2025. (*See* Doc. 1).

## **Applicable Legal Standard**

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or to last at least twelve months. 42 U.S.C. § 423(d)(1)(a). To determine disability, the ALJ applies a five step sequential evaluation. 20 C.F.R. § 416.920(a)(4); *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024). At step one, the ALJ asks whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has a severe impairment. At step three, the ALJ considers whether the impairment meets or medically equals a listed impairment. At step four, the ALJ assesses whether the claimant can perform past relevant work. At step five, the ALJ determines whether the claimant can adjust to other work that exists in significant numbers in the national economy.

If the Plaintiff is working or lacks a severe impairment, then they are not disabled. 20 C.F.R. § 416.920(a)(4)(i)–(ii). Otherwise, disability is established only if

the impairment meets or medically equals a listed impairment or, alternatively, if the claimant cannot perform past work and cannot adjust to other work. *Id.* §§ 416.920(a)(4)(iii)–(v). The Plaintiff bears the burden through Step Four. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). At step five, the burden shifts to the Defendant to show that other work exists in significant numbers that the claimant can perform. *Id.*

This Court reviews the ALJ's decision to ensure that the decision is supported by substantial evidence and employs the correct legal standards. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

**THE DECISION OF THE ALJ**

The ALJ followed the five-step analytical framework described above. At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, and was not presently employed and had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 504 (citing 20 CFR §§ 404.1571 *et seq.*; 416.971 *et seq.*)).

At step two, the ALJ found that Plaintiff had severe impairments of adjustment disorder with anxious mood and vascular dementia. (*Id.* 505 (citing 20 CFR §§ 404.1520(c); 416.920(c))). The ALJ further found that Plaintiff provided medical evidence establishing valid diagnoses for hypertension, obesity, and

polysubstance abuse in remission, but concluded that these conditions reflected only slight abnormalities requiring minimal treatment. (*Id.*).

At step three, the ALJ found that none of Plaintiff's conditions, alone or in combination, met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926)). He determined that the collective clinical findings did not approach Listing-level severity and that disability therefore could not be established on the medical evidence alone. (*Id.* 506).

The ALJ also concluded that Plaintiff's mental impairments did not satisfy Listings 12.02, 12.04, 12.06, or 12.08. (*Id.*). In evaluating the "paragraph B" criteria, he found moderate limitations in understanding, remembering, or applying information, in concentrating, persisting, or maintaining pace, and in adapting or managing oneself, along with a mild limitation in interacting with others. (*Id.* 506–08). The ALJ noted that Plaintiff lived independently, managed his medications and finances, performed daily activities, interacted socially, and demonstrated adequate attention, reasoning, and judgment despite documented memory deficits, slowed processing, and anxiety-related distraction. (*Id.*). Because Plaintiff did not exhibit two marked limitations or one extreme limitation, the "paragraph B" criteria were not met. (*Id.* 508). The ALJ likewise found the "paragraph C" criteria unsatisfied, explaining that Plaintiff's daily activities were inconsistent with only marginal adjustment. (*Id.*).

In assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform work at all exertional levels with several nonexertional

limitations. (*Id.*). Plaintiff could understand, remember, and carry out simple instructions, make simple work-related decisions, interact occasionally with the public, coworkers, and supervisors, adapt to occasional changes in a routine work setting, and avoid concentrated exposure to work requiring multitasking or teamwork. (*Id.*). He could not perform work requiring a specific production rate such as assembly line work or hourly quotas. (*Id.*). The ALJ evaluated Plaintiff's symptoms under the two-step framework in the regulations[1] and concluded that although Plaintiff alleged vascular dementia, memory loss, depression, anxiety, and cognitive decline, the intensity and persistence of these symptoms were not fully consistent with the longitudinal record. (*Id.*).

At steps four and five, the ALJ concluded that Plaintiff could not return to his past relevant work, yet other jobs existed in the national economy that he could perform. (*Id.* 515–16). The ALJ adopted the testimony of the vocational expert that Plaintiff would be able to perform the requirements of occupations such as Cleaner II, DOT #919.687-014, Laundry worker II, DOT #361.685-018, and Hand packager, DOT #920.587-018. (*Id.* 516).

## ANALYSIS

Plaintiff raised two issues in the ALJ's decision.

---

[1] It must "first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (Tr. 509 (citing 20 CFR 404.1529 and 416.929 and SSR 16-3p)).

## I. Listing 12.02 Analysis

Plaintiff's first allegation is that the evidence related to his vascular dementia meets the requirements of Listing 12.02, and that the ALJ committed reversable error by failing to make such a finding. (Doc. 12, pp. 9–12). Listing 12.02, titled "Neurocognitive disorders," notes the following:

> a. These disorders are characterized by a clinically significant decline in cognitive functioning. Symptoms and signs may include, but are not limited to, disturbances in memory, executive functioning (that is, higher-level cognitive processes; for example, regulating attention, planning, inhibiting responses, decision-making), visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards.
> b. Examples of disorders that we evaluate in this category include major neurocognitive disorder; dementia of the Alzheimer type; vascular dementia; dementia due to a medical condition such as a metabolic disease (for example, late-onset Tay–Sachs disease), human immunodeficiency virus infection, vascular malformation, progressive brain tumor, neurological disease (for example, multiple sclerosis, Parkinsonian syndrome, Huntington disease), or traumatic brain injury; or substance-induced cognitive disorder associated with drugs of abuse, medications, or toxins.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 (b)(1)(a)–(b). To meet the requirements of such an impairment, an individual must satisfy both Paragraphs A and B of that subsection.[2] *Id.* at 12.02. It is undisputed that Plaintiff has satisfied Paragraph A, (Doc. 12, pp. 9–10); (*see generally* Tr. 499–516; Docs. 18, 21), thus the analysis will focus primarily on the requirements of Paragraph B. Paragraph B requires "Extreme limitation of one, or marked limitation of two, of the following areas of mental

[2] Listing 12.02 also permits an applicant to meet the listing by satisfying Paragraphs A and C, even if the requirements in Paragraph B are not met. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02. Because Plaintiff challenges only the ALJ's determination that Plaintiff failed to satisfy Paragraph B, (*see generally* Docs. 12, 18, 21), the Court limits its analysis accordingly and does not address Paragraph C.

functioning: 1. Understand, remember, or apply information. 2. Interact with others. 3. Concentrate, persist, or maintain pace. 4. Adapt or manage oneself." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.02(B) (internal citations omitted).

The ALJ determined that Plaintiff had merely a moderate limitation regarding mental functioning numbers 1, 3, and 4, and only a mild limitation as to mental functioning number 2. (Tr. 506–07). The ALJ based this determination on Plaintiff's reported daily activities and the clinical findings documented throughout the record. (*Id*. 506–08). Plaintiff asserts that the ALJ should have concluded he had a marked limitation of mental functioning numbers 1 and 3. (Doc. 12, pp. 10–12).

Regarding Plaintiff's ability to understand, remember, apply information, concentrate, persist, or maintain pace (mental functioning numbers 1 and 3 respectively) the ALJ based his "moderated determinations" based on the overall record showing that Plaintiff functioned independently in daily life while exhibiting measurable cognitive deficits on examination. (Tr. 506). More specifically, the ALJ noted that Plaintiff lived alone and independently completed routine tasks such as preparing simple meals, doing laundry, cleaning, shopping, and running errands. (*Id*.). Plaintiff managed his medications and finances without difficulty and denied needing reminders, although he reported memory problems, confusion, and difficulty following written and spoken instructions, and relied on writing things down to remember information the next day. (*Id*.). Mental status examinations showed impaired working memory, slowed thought processes, and borderline to low average intellectual functioning, yet also adequate attention, fair insight, normal mood and affect, intact simple reasoning, and good recent and remote memory. (*Id*.). WMS IV

testing placed his overall memory functioning in the low average range. (*Id.*). Based on this evidence, the ALJ concluded that Plaintiff could understand, remember, and carry out simple instructions and make simple work-related decisions, supporting only a moderate limitation in this domain. (*Id.*).

Plaintiff first asserts that the ALJ's determination on this subject was contradictory because of the ALJ's conclusion that Plaintiff "uses a notebook to essentially write everything down." (Doc. 12, p. 10 (citing Tr. 506)). Defendant responds that the ALJ's determination was at least in part based on the assessments of state-agency medical experts, that those opinions constitute substantial evidence, (Doc. 18, p. 4 (citing *Massaglia v. Saul*, 805 F. App'x 406, 409–10 (7th Cir. 2020))), and that use of such substantial evidence warrants denial of Plaintiff's appeal (Doc. 18, p. 5). The Court agrees.

In a substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). On review, the Court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (citing *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008)). The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski*, 245 F.3d at 887. The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or

testimony presented, but he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference. So, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of his factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

The ALJ's determination of Plaintiff's mental functioning 1 was clearly based on substantial evidence as demonstrated by the decision's adoption of assessments made by one examining psychological expert and two state agency psychological experts. (Tr. 513–15).

The state agency psychological experts assessed mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and a moderate limitation in concentrating, persisting, or maintaining pace. (*Id.* 513). After the filing date, they assessed moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, and mild limitations in the remaining domains. (*Id.*). They also concluded that Plaintiff could perform two to three step tasks on a sustained basis. (*Id.*). The ALJ found these assessments consistent with the subsequent evidence, including Plaintiff's continued ability to live independently, manage his finances and medications, prepare simple meals, perform household chores, shop, walk for exercise, and interact with others daily. (*Id.* 513–14).

The ALJ further considered the opinions of Catherine M. York, Ph.D., Jonathan Thomas-Stagg, Ph.D., and Harry Deppe, Ph.D. (*Id.* 510–14).

In March 2021, Plaintiff underwent a neuropsychological evaluation with Dr. York. (*Id*. 510–11). Dr. York reported that on examination Plaintiff was groomed and alert, but misstated basic information such as his age, date, and location, and showed slowed thought processes. (*Id*.). Testing demonstrated borderline to low average intellectual functioning, impaired working memory and reasoning, and significant deficits in acquiring and retaining new information. (*Id*. 511). Dr. York diagnosed vascular dementia with behavioral disturbance. (*Id*.).

In August 2021, Dr. Thomas-Stagg, conducted a second psychological evaluation of Plaintiff. (*Id*. 511). Dr. Thomas-Stagg concluded that Plaintiff functioned independently because he maintained his hygiene, kept his apartment clean, prepared meals, managed his finances, and walked for exercise. On examination. (*Id*.). Dr. Thomas-Stagg concluded that although Plaintiff reported memory problems and displayed occasional anxious mood and cloudy thinking, his overall mental status findings remained within the expected range. (*Id*.).

In May 2022, Plaintiff underwent a third psychological evaluation with Dr. Deppe. (*Id*. 511–12). Dr. Deppe found that Plaintiff lived alone, handled routine tasks such as cooking, cleaning, laundry, and walking for exercise, and maintained good relationships with others. (*Id*.). Plaintiff performed serial sevens and recalled the months of the year in reverse without error, and WMS IV testing reflected overall low average memory functioning. (*Id*. 512). Based on these findings, Dr. Deppe concluded that Plaintiff could relate to others, follow simple instructions, maintain attention for simple tasks, and tolerate ordinary work stress. (*Id*.).

In reviewing these records and opinions, the ALJ concluded that the medical opinions and prior administrative findings, together with Plaintiff's daily activities, treatment history, and examination results, demonstrated functional limitations but did not support restrictions beyond those reflected in the residual functional capacity. The ALJ therefore found that Plaintiff remained capable of performing work within the assessed nonexertional limitations. (*Id*. 515).

Plaintiff asserts that the ALJ's conclusion on this subject was in error because Plaintiff requires a notebook to "essentially write down everything." (Doc. 12, p. 10). Plaintiff's argument relies completely on the lay opinion that such a requirement is incompatible with the medical expert's determinations. Additionally, Plaintiff has provided no medical expert's opinion that indicated he had more than a moderate limitation. (*See generally*, Tr., Docs. 12, 20). "The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal. Doing so would essentially put ourselves in the ALJ's shoes to re-weigh the evidence, a role that we try to avoid." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

Plaintiff also asserts that the ALJ failed to consider certain facts, that while he lives alone, he requires the assistance of neighbors and sisters for certain activities. (Doc. 12, p. 11). While it is not explicitly stated that such facts were used in consideration of the ALJ's determination, it is clear that such facts were presented to the ALJ. (*See* Tr. 509) (During the evidentiary hearing, Plaintiff "noted his neighbor helped him fill out his paperwork); (*Id*. 506, 514) (references Plaintiff's sister's assistance). Regardless, "[a]n ALJ need not address every piece or category of

evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)

Thus, it is clear that the ALJ supported his decision with substantial evidence. As a result, Plaintiff cannot overcome the substantial evidence standard, under which a Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Therefore, Plaintiff's argument here fails.

## II. Residual Function Capacity Limitations

Plaintiff's second allegation is that the ALJ committed reversible error by not including medically supported limitations related to need to "constantly write down information," and that he would need constant reminders in his Residual Function Capacity ("RFC"). (Doc. 12, p. 13). Plaintiff asserts that based on the testimony of the Vocational Expert ("VE"), that constant or sustained reminders would be work preclusive. (*Id.*). Defendant responds that the RFC finding was reasonable, because it limited Plaintiff to work which "did not demand robust memory functioning." (Doc. 18, p. 8).

The RFC is "an assessment of an individual's ability to do sustained work. It is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475). It is based upon the medical evidence in the record and the ALJ is required to determine which treating and examining doctors' opinions should

receive weight and must explain the reasons for that finding. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. §§ 404.1545(a)(3), 1527(d), (f)). The RFC "must incorporate all of the claimant's limitations supposed by the medical record, including even moderate limitations in concentration, persistence, or pace," *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), and "must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "Mental limitations must be part of the RFC assessment, because a limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Craft*, 539 F.3d at 676 (citation modified) (citing 20 C.F.R. § 404.1545(c)).

Plaintiff's RFC notes that:

> [T]he claimant has the capacity to carry out simple instructions and make judgments for simple work-related decisions involving occasional interaction and without concentrated exposure to work requiring multitasking or teamwork. He can deal with occasional changes in a routine work setting but he cannot perform work that require a specific production rate or hourly quotas. Said limitations consider the claimant's alleged memory issues with corresponding objective medical signs for slowed cognitions, some confusion on orientation for day, low average intellectual functioning, and low average memory on testing.

(Tr. 512).

In explaining the basis for the RFC, the ALJ first listed Holcomb's conditions—vascular dementia, high blood pressure, depression, and anxiety. (*Id.* 509). The ALJ substantially reviewed the record, including relevant testimony and medical evidence. (*Id.* 510–15). The ALJ ultimately concluded that Holcomb's testimony

regarding the severity of his memory and other mental impairments were inconsistent with the record. (*Id*. 512). Specifically, the ALJ noted that Holcomb lives alone, manages his finances, interacts with his neighbors, and independently performs routine tasks such as cooking, cleaning, laundry, and grocery shopping by bus. (*Id*. 512–13). The ALJ found that these activities demonstrate an adequate level of adaptive functioning and are consistent with examination findings showing adequate cognition, simple reasoning skills, judgment, insight, interaction, and attention. (*Id*.). The ALJ further observed that Holcomb's most recent treatment notes referenced only "periods of forgetfulness" and did not suggest any worsening of his condition. (*Id*. 512).

The ALJ also evaluated the medical opinions and prior administrative medical findings and found no basis for greater restriction. (*Id*. 513–14). The ALJ determined that the state-agency medical consultants' findings were generally persuasive, noting that the record did not support severe physical impairments and that Holcomb's hypertension and obesity were stable and non-limiting. (*Id*.). The ALJ also found Dr. Cranston's opinion unpersuasive because the asserted visual limitations were inconsistent with Holcomb's daily functioning and with largely normal examination findings. (*Id*. 513). Likewise, the ALJ found Dr. York's compensatory-strategy recommendations unpersuasive in light of later testing and Holcomb's demonstrated ability to navigate daily tasks independently, and determined that Dr. Deppe's opinion, though supportive of the RFC, was not detailed enough to warrant additional limitations. (*Id*. 514). Based on this evidence, the ALJ concluded that Holcomb's daily

functioning and objective medical evidence did not support greater limitations than those reflected in the RFC.

The ALJ's decision makes clear that he *did* consider Holcomb's testimony that he needed to "constantly write down information," and that he would need constant reminders, when determining Holcomb's RFC. He, however, concluded that Holcomb's testimony about his memory was not credible in light of the rest of the testimony and available medical evidence. To disturb this conclusion would be nothing short of the Court substituting its own judgment for that of the ALJ, which we are prohibited from doing. *Lopez*, 336 F.3d at 539. In this circumstance, the only province of the Court is to determine whether there is an accurate and logical bridge between the evidence in the record and the ALJ's conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Because the ALJ properly reviewed all evidence, including testimony and medical records, and tied his conclusion regarding the RFC to what was in the record, the Court concludes that such a logical bridge exists, and that it is supported by substantial evidence.[3] Accordingly, Plaintiff's second argument fails.

## CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no reversable errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social

[3] The Court does not address whether an RFC could accommodate a claimant who must constantly write things down, because the ALJ did not find that Holcomb functions in that manner, and such a conclusion was supported by substantial evidence.

Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of the Defendant.

**IT IS SO ORDERED.**

**DATED: September 9, 2026**



**STEPHEN P. McGLYNN**
**U.S. District Judge**